ALPER KOLCU,

                    Plaintiff,

        v.

Sherrif Denita R. Ball, et al.
        (See Attached Full List)
                    Defendants

Case No. 22-cv-1552-LA

**FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**

**JURY TRIAL DEMANDED**

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT – April 23, 2024

NOW COMES Plaintiff, ALPER KOLCU, as Pro Se representing himself, for his First Amended Complaint against Defendants Sherrif Denita R. Ball. et al, including the Milwaukee County District Attorney's office (hereinafter "MCDA") and Milwaukee Co. Sherriff's Office (hereinafter "MCSO"),  states as follows:

### I.    INTRODUCTION

The complaint alleges deliberate-indifference claims related to an escalated Upper Respiratory Tract Infection ("URTI") injury sustained while Plaintiff was housed at Milwaukee Cunty Jail ("MCJ").

This action involves defendant, the Milwaukee County District Attorney's Office ("MCDA"), and Plaintiff's contend each claim was an unlawful violation of constitutional rights, including but not limited to the following actions;

**A.**      Unconstitutional Stop and Arresting on a warrant for a pretextual reason
**B.**      False domestic violence warrant arrest
**C.**      Falsely verifying a warrant by the supervisors
**D.**      Causing Plaintiff to be incarcerated without just cause
**E.**      Unconstitutional Arrest and Detain
**F.**      Lying under Oath
**G.**      Police Misconduct - Allowing civilians to use police for harassment
**H.**      Discrimination against a minority-American citizen
**I.**      Harassment via judicial abuse
**J.**      Preventing Plaintiff from attending and resolving pending court cases
**K.**      Unequal protection of the laws
**L.**      Unreasonable requests and Malicious Prosecution
**M.**      Not following Wisconsin statutes
**N.**      Not following federal laws
**O.**      Discrimination under various State and Federal Laws
**P.**      Monel Liability extending to Private Corporation and the County
**Q.**      State Law Claims for Medical Malpractice against Defendants

In this Complaint, Plaintiff will be presenting the Elephant in the Room. And, hopefully move to the Discovery phase so that he can prove how the MCDA Investigator Sarah C. Blomme falsified police reports in order to (Wrongfully) arrest Plaintiff the morning of December 17, 2019, minutes prior to Plaintiff's divorce case.

Plaintiff will also be presenting how MCDA's Office knowingly, intentionally and with a reckless disregard made false presentations resulting with violation of Plaintiff's Due Process Rights by judicially sabotaging the dozens of hearings and more than eight (8) attempts to schedule a jury trial Plaintiff requested.

Furthermore, he will be presenting how the same Investigator arrested the Plaintiff the second time during his 8th attempted Jury Trial with further falsified police reports resulting with Case No. 22CF3754.

## II.    TABLE OF CONTENTS

I.      INTRODUCTION. ................................................................................i

II.     TABLE OF CONTENTS. ...............................................................iii-v

III.    STATEMENT OF THE CASE ...........................................................1

    A.  State Court Proceedings in Milwaukee County .....................................1

    B.  Circuit Court Proceedings....................................................... 1-2

    C.  District Court Proceedings...................................................... 3-5

IV.     AMENDED PLEADINGS – Relates Back to Original Claims. ...................................5

V.      IMMEDIATE PROCEDURAL BACKGROUND....................................................6

VI.     JURISDICTIONAL STATEMENT AND VENUE................................................ 7-8

    A.  District Court's Jurisdiction - 28 U.S.C. §1331- §1332(a)(1); §1343 ...................7

    B.  Venue – WI. E.D. under 28 U.S.C. § 1391(b) ...........................................8

    C.  Administrative Proceedings – FBI Complaint...........................................8

VII.    LEGAL STANDARD ..................................................................9

VIII.   PARTIES. .................................................................... 9-14

    A.  Plaintiff and his Protected Class Status .............................................9

    B.  Corporate Defendants ........................................................ 10-11

    C.  Governmental Agency/Defendants.............................................. 12-14

        1.    CITY

        2.    COUNTY

        3.    COUNTY MEDICAL PROVIDER – WELLPATH

    D.  Individual Defendants.............................................................15

IX.     FACTUAL BACKGROUND.................................................................16

X.      SERIOUS MEDICAL NEEDS AND HISTORY............................................ 16-17

XI.    SUMMARY OF CLAIMS ...................................................................17

XII.   DEFENDANT'S RETALIATORY ACTIONS. ................................18

XIII.  ALLEGATIONS....................................................................... 19-22

        A.  Count I- Violation of Eighth Amendment – Failure to Provide Medical Care......19

        B.  Count II- Violation of Fourteenth Amendment – Failure to Provide Med. Care: .20

        C.  Count III- Violation of 42 U.S.C. § 1983 - Failure to Intervene: ..........................22

        D.  Count IV- Violation of 8th & 14th Amendment Rights  - Failure to Train ..........22

        E.  Count V - Violation of 8th & 14th Amendment Rights  - Negligence ..................23

        F.  Count VI- Violation of 8th & 14th Amendment Rights  - Deliberate Indifference23

        G.  Count VII- Violation of 8th & 14th Amendment Rights  - Bystander Liability ....26

        H.  Count VIII- Violation of Const. Rights  - Malicious Prosecution ................... 27-31

        I.   Count IX - Violation of 42 U.S.C. § 1983 – Improperly Seized Evidence ...........31

        J.   Count X- Violation of Title VI of Civ. R. Act of 1964 - Discrimination ..............34

        K.  Count XI - Violation of 42 U.S.C. § 1983 – Emotional Distress ..........................35

        L.   Count XII- Violation of Title II of Civ. R. Act of 1990 - Discrimination ............35

        M.  Count XIII- Violation of Section 504 of the Rehabilitation Act of 1973  ............37

        N.  Count XIV- Violation of Title II of Civ. R. Act of 1990 – (Natl.) Discrim. .........38

        O.  Count XV - Violation of Eighth Amendment Rights  - Retaliation ....................38

        P.  Count XVI- Violation of 7 CFR Part 1734- Federal Compliance ........................40

        Q.  Count XVII- Violation of 18 U.S.C. § 2510 et seq.- Eavesdropping ...................43

        R.  Count XVIII- Willful Deprivation of Constitutional Rights - 18 U.S.C. §§ 241 ..44

        S.   Count XIX - Violation of 42 U.S.C. § 1983 – FALSE ARREST ........................46

        T.  Count XX - Violation of 29 U.S.C. § 2612 – Obstructing Justice ........................48

iv

U.  Count XXI - Violation of HIPAA  - Privacy of Medical Records ................. 48-49

V.  Count XXII - Violation of Judicial Canon  - Judge Protasiewicz ................... 50-53

W. Count XXIII - Violation of Judicial Canon  - Judge Kies ............................... 53-55

XIV.    CONCLUSION and REQUEST FOR JURY TRIAL ................................................56

XV.    DAMAGES and PRAYER FOR RELIEF .............................................................. 57-60

XVI.    Certificate of Compliance .................................................................................. 61

XVII.    Certificate of Service .......................................................................................... 61

XVIII.    TABLE OF AUTHORITIES ......................................................................... Attached

XIX.    Terms and Definitions ................................................................................... ECF 1

XX.    EXHIBIT LIST ............................................................................................... ECF 1

I, Alper Kolcu, Plaintiff in above-entitled case, declares the following statements are true and all supporting exhibits or evidences are attached herein. For the purposes of this Brief, Plaintiff relies on the Court records under the above-entitled case.

See attached Table of Authorities for relevant laws.

The Plaintiff seeks declaratory and injunctive relief as well as monetary damages for his injuries as explained in section XV- Damages.

v

## III.    STATEMENT OF THE CASE

### A.    State Court Proceedings in Milwaukee County

1.    It all started with Plaintiff leaving his marital relationship with his wife at the time, Emily Kolcu who is a party to this suit as Defendant # 33 ("hereinafter "Def #xx").

2.    Def #33 started the divorce case after about a month, under Milwaukee Co. Case# 19FA6662, in November of 2019.

3.    Plaintiff secured a lawyer for the upcoming divorce hearing scheduled for December 17, 2019.

4.    Things quickly changed for Plaintiff when his (ex)-wife's mom, who is a retired police sergeant, stepped in with her connections within the Sensitive Crimes Division of Milwaukee District Attorney's Office.

### B.    Circuit Court Proceedings

5.    Plaintiff, while waiting in line next for his first divorce hearing, found himself arrested with no explanation by MCDA Investigator Sarah C. Blomme (hereinafter "Inv. Blomme"), who is a party to this action as Def # 17.

6.    Turns out Inv. Blomme has been cooking her witchcraft for the previous six (6) months, prior to the first arrest on December 17, 2019.

7.    Neither Plaintiff, nor his lawyer Mike F. Torphy, knew the extent of the greater homework done by these individuals in the preceding months.

8.     Neither the Plaintiff , nor his counsel (hereinafter "Torphy")
understood why they were shut down by the Circuit Court Judge Jean M. Kies, who
is a party to this suit as Def #29, during the Preliminary hearings under 19CF5571.

9.     19CF5571 was filed against Plaintiff, by his ex-wife Def #33 and Inv.
Blomme, with allegations that he emotionally abused his wife, placed a GPS tracker
to find her whereabouts and threatened to harm her.

10.     In reality, Plaintiff had left his wife a month earlier. He no longer
wished to participate in a marriage due to her drug and alcohol abuse.

11.     None mattered. Torphy's client's phone was confiscated; jailed for a
week in Milwaukee County Jail; ordered no contact with his Def #33 and his kids
for the following 8 months.

12.     The lack of medical-care at the jail for his emergency needs and
chronic needs was nothing compared to the physical and emotional pain in the
months coming up.

13.     Coming up with three (3) decades of law experience in Wisconsin,
Torphy didn't second guess the charges filed by the MCDA's Office. Therefore, fully
complied with the orders of the judges, even If he was shut down on his questioning
of the victim or State's Witness, Inv. Blomme during the Preliminary Hearings.

14.     He kept asking his client to make a plea deal and accept the charges so
Plaintiff can start seeing his kids.

15.     Plaintiff had chosen to bite the bullet and suffer the pain instead of
accepting the falsified records, because he knew they were falsified.

2

C.     District Court Proceedings

16.     Torphy had his doubts at the time, [b]ecause which DA Investigator would jeopardize their post for a silly (and falsified) police report?

17.     A Preliminary hearing was conducted on March 26, 2020.

18.     It wasn't apparent on that day, that Inv. Blomme had already committed a violation of Plaintiff's rights going back to May of 2019.

19.     Because, she swore under oath that day, that she met Plaintiff's [ex]-wife on December 14, 2019, the first time. Why would anyone suspect she had met Plaintiff's [ex]-wife and her mother six months earlier?

20.     Neither Torphy, nor Plaintiff, understood why in the earth an MCDA Investigator would meet someone on a Saturday morning to file a police report.

21.     About three and a half (3.5) years later, on ninth (9th) attempted Jury Trial many of the answers were daylighted, on June 7, 2023.

22.     The jury instructions were so compromised that the jury itself had to officially kick one of its jurors out of the room. An incident Torphy hadn't faced in the near 3 decades of his practice.

23.     Juror #22 had committed a contempt of court order, and made background investigation of her own, of the Plaintiff.

24.     Plaintiff was given an "opportunity" to make a decision to either move forward with 11 jurors, or hit the roads once more to schedule a Pre-Trial, sit through several hearings prior to scheduling a Jury Trial, and hope everyone involved has their calendars available in the following six months.

3

25.    At the end, this was the flavor of the day, just like the previous eight attempted jury-trials.

26.    It was a choice between a mental ambush for a day with high hopes and move on with life, OR, was a mental ambush to sit through more hearings for the next three to six months, everyday of his life. Therefore, Plaintiff opted in, under duress, to move forward with the 11 jurors.

27.    Luckily the jurors dropped the felony charges on stalking and domestic violence allegations.

28.    It was a good day, except, Plaintiff wasn't given an opportunity to ask why his kids were marked absent or tardy two thirds (2/3, or 66%) of the time.

29.    At the end, that's why he worked two jobs so his wife could stay home and care for their kids and attend to their needs.

30.    He was gone 5 AM in the morning for his day job, and work on remodeling with his dad until it is time to pick up the kids from school.

31.    Kid's school says everything was wonderful on a daily basis. No mention of being marked absent or tardy until end of year results are revealed.

32.    Something was so odd with this equation. Plaintiff's [ex]-wife's struggle with substance and alcohol could not be any of the reasons behind. Because Plaintiff was barred from introducing evidence to the jury on those topics.

33.    At the end, MCDA's office had unlimited resources and budget from the hard-working citizens of Milwaukee County. Their records were immaculate.

4

34. Elephant in the room had his mouth taped and the lights were shut. Only remedy was to file an inadequate medical care by the county jail contractor.

## IV. AMENDED PLEADINGS

35. Plaintiff filed his Complaint (ECF 1) on December 27, 2022.

36. Plaintiff hereby files his First Amended Complaint against the Defendants (Please see attached Full List of Defendants), due to the actions occurred, and as outlined on the filed First Amended Complaint herein as well as the original Complaint. And, pursuant to Fed. R. Civ. P. Rule 15(b) and 15(c)

37. Therefore, relates back to the claims listed under the original Complaint, including but not limited to the discriminatory and retaliatory actions in violation of local, state and federal laws.

38. At all times relevant, both Corporate Defendants and Individual Defendants acted as Milwaukee County's agents while the illegal activities were being committed.

39. And, these defendants consented to and participated in the fraudulent conducts listed. Therefore, became party to this suit in their individual capacities.

40. Plaintiff prays this Honorable Court finds the sufficient vicarious liability on defendants for codefendant's acts, including but not limited to the original Complaint, but also the counts of allegations listed herein.

41. Therefore, pursuant to Fed. R. Civ. P. Rule 15(c), Plaintiff hereby declares that this First Amended Complaint relates back to the filing of the original pleadings.

5

## V.     BACKGROUND

**SHORT PROCEDURAL BACKGROUND**

42.     Plaintiff filed the complaint on December 26, 2022. (ECF 1).

43.     On September 6, 2023, Honorable Judge Adelman screened the complaint (ECF 6). And, he ordered Plaintiff to identify the defendants within sixty (60) days of attorney appearing.

44.     On October 31, 2023, counsel for Sheriff Ball entered a notice of appearance. (ECF 9)

45.     On January 23, 2024, Honorable Judge Lynn Adelman entered Order (Dkt 14) requiring Plaintiff to identify the defendants by February 23, 2024.

46.     Plaintiff pursued communications with the counsel of records. Then requested an extension of time. (ECF 15 & 16)

47.     On February 29, 2024, Honorable Judge Lynn Adelman entered Order (Dkt 17-3) granting the extension of time to April 23, 2024.

48.     Plaintiff sent numerous Open Records Requests and also requested Clerk of U.S. District Court to issue three subpoenas (ECF 17).

49.     Milwaukee County Jail Medical Care Provider, Wellpath LLC., supplied a response on February 29, 2024, indicating they have no records for Plaintiff's stay during December 2019 and September 2022. (See ECF 18).

50.     On April 8, 2024, Plaintiff filed Writ of Mandamus (ECF 18-19) requesting this Honorable Court to Compel MCDA and MCSO to produce the names of individuals involved in the arrest and medical care of Plaintiff.

51.     Subsequently, On April 16, 2024, filed Motion for Extension (ECF 20)

6

52.     Plaintiff respectfully filing his First Amended Complaint. And pursuant to Fed. R. Civ. P. Rule 10(c) the statements in the original pleading is adopted and incorporated by reference herein.

53.     Plaintiff respectfully lists separate causes of actions, separately stated and numbered. However, due to the number of Defendants, filthy four (54), Plaintiff respectfully reference or cross-reference each count and/or statement containing mutual facts and elements for the purposes of shortening the length of the complaint and promote clarity.

## VI.     JURISDICTIONAL STATEMENT AND VENUE

### A.      DISTRICT COURT'S JURISDICTION

54.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331-§1332(a)(1); §1343

55.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

56.     The Court has jurisdiction over this matter pursuant to 24 U.S.C. § 10228(c)(4).

57.     This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the state law claims, Wisconsin, because they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

58.     This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district

7

are sufficient for the exercise of jurisdiction over Defendants to comply with

traditional notions of fair play and substantial justice, satisfying the standard set

forth by the United States Supreme Court in International Shoe Co. v. Washington,

326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over

Plaintiff's future state-law claim(s) because such claim(s) arise out of the same

common nucleus of operative facts as his federal claims asserted herein.

### B.    VENUE

59.    Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. §

1391(b) because all the events giving rise to the Plaintiff's claims occurred within

this District, and at all times relevant the Plaintiff was a resident of this District,

and the Defendant's principal place of business/office is within this District.

### C.    ADMINISTRATIVE PROCEEDINGS

60.    Plaintiff is proceeding herein under the constitutional right violations.

61.    On November 17, 2022, Plaintiff filed a Complaint with Federal

Bureau of Investigations ("FBI").

62.    On December 22, 2022, the Plaintiff, ALPER KOLCU, filed a Claim

Form against Milwaukee County.

63.    Subsequently, Plaintiff sent the Notice of Claims to Defendants.

8

## VII.  LEGAL STANDARD

64.    The Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018).

65.    [P]laintiffs aren't required to plead legal theories, only facts, *see Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 517-18 (7th Cir. 2015)

66.    *"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."* Iqbal, 556 U.S. at 678.

67.    As the Supreme Court stated "[b]ecause vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each [] defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676

## VIII.  PARTIES

### A.    <u>Plaintiff and his Protected Class Status</u>

68.    At all times relevant hereto, the Plaintiff, ALPER KOLCU ("Kolcu"), is an adult individual, was a resident of Milwaukee County, State of Wisconsin.

69.    At all times relevant, Plaintiff fully, adequately, and completely performed all of the functions, duties and responsibilities of his compliance to the lawful orders of the Police Officers, Investigators, Probation Officers, Jail Staff, Court Staff, Commissioners and Judges.

9

70.     For the purposes of Title VI of the Civil Rights Act of 1964, and for any other applicable laws, Plaintiff hereby indicates that he is a minority American citizen, with original nationality and citizenship from Turkey, with religious background in Alevi-Muslim faith and identifies as straight-male.

71.     For the purposes of Title II of the Americans with Disabilities Act of 1990, and for any other applicable laws, Plaintiff hereby indicates that he is a disabled American citizen, who has disability as "An individual is considered to have a "disability" if he or she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment.

### B.     Corporate Defendants

72.     Corporate Defendants are outlined in the Attachment #1 – Defendant List, Amended April 23, 2024, and attached herein.

73.     Respondent, MCDA and MCSO Office, is an agency of the State of Wisconsin with an address of "Safety Building, 821 W. State Street, Milwaukee, WI, 53233-1485".

74.     Office is an "Authority" under Wis. Stat. § 19.32(1), represented by the Deputy District Attorney, Karen Loebel, according to the response received by Plaintiff (See ECF 15-17, Exhibit A-D).

75.     Corporate defendants attached in Defendant List collectively provide medical services across the United States and supply its own labor force for such services.

10

76.    Corporate Defendants maintains ownership of individual firms and make its own hiring, firing, training and maintenance of licensed staff.

77.    Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, Corporate Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

78.    At all times relevant herein, Defendants acted by and through their agents' servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants, except listed otherwise.

79.    For purposes of the local, State and Federal Compliance, Corporate Defendants were an "employer" of Individual Medical Healthcare Provider, and these providers were "employed" by Corporate Defendants, as those terms, or variations thereof, are used in Wis. Stat. §§ 109.01 et seq., 103.01 et seq., 104.01 et seq., and Wis. Admin. Code § DWD 272.01.

80.    During the relevant time periods as stated herein, Defendant was engaged in "commerce" and/or its employees were engaged in "commerce," as that term is defined under the FLSA.

81.    These Corporations had a duty to train its staff; maintain proper certificate and licenses; and supply compliance to the local, State and Federal Laws.

11

C.       <u>**Governmental Agency/Defendant**</u>

1.       <u>CITY</u>

82.       Individual Defendants listed on the Defendant List (Attached herein), are party to this action on their individual as well as official capacities.

83.       The Defendant, Milwaukee Police Department (hereinafter "Defendant MPD") is a governmental agency and/or political subdivision of the State of Wisconsin as defined by relevant Wis. Adm. Code §# and has facilities located in Milwaukee County, Wisconsin. At all times mentioned in this lawsuit the Defendant MPD acted and carried on its business by and through its agents, servants, and/or employees. Additionally, these agents, servants, and/or employees were operating within the scope of their officially assigned and/or compensated duties at all times hereinafter mentioned.

84.       The Defendant, City of Milwaukee (hereinafter "Defendant Milwaukee") is a political subdivision of the State of Wisconsin as defined in relevant Wis. Adm. Code§ 15 and has facilities located in Milwaukee County, Wisconsin. At all times mentioned in this lawsuit the Defendant Milwaukee acted and carried on its business by and through its agents, servants, and/or employees at the above mentioned location. Additionally, these agents, servants, and/or employees were operating within the scope of their officially assigned and/or compensated duties during all times hereinafter mentioned.

85.       All MPD Police Officer Defendants were acting within the course and scope of their official duties as employees of the MPD and City in relation to this claim.

12

86.     Plaintiff is informed and does believe that Defendants MPD and City of Milwaukee had the right and/or power to direct and control the manner in which its employees and/or agents executed their duties.

87.     The incident took place in the City of Milwaukee, Milwaukee County, Wisconsin.

## 2.     COUNTY

88.     Individual Defendants listed on the Defendant List (Attached herein), are party to this action on their individual as well as official capacities.

89.     The Defendant, Milwaukee County District Attorney  (hereinafter "MCDA") is a governmental agency and/or political subdivision of the State of Wisconsin as defined by relevant Wis. Adm. Code §# and has facilities located in Milwaukee County, Wisconsin. At all times mentioned in this lawsuit the Defendant MCDA acted and carried on its business by and through its agents, servants, and/or employees. Additionally, these agents, servants, and/or employees were operating within the scope of their officially assigned and/or compensated duties at all times hereinafter mentioned.

90.     The Defendant, Milwaukee County (hereinafter "Defendant County") is a political subdivision of the State of Wisconsin as defined in relevant Wis. Adm. Code§ 15 and has facilities located in Milwaukee County, Wisconsin. At all times mentioned in this lawsuit the Defendant County acted and carried on its business by and through its agents, servants, and/or employees at the above-mentioned location. Additionally, these agents, servants, and/or employees were operating

13

within the scope of their officially assigned and/or compensated duties during all times hereinafter mentioned.

91.     All MCDA Investigators, as Individual Defendants, were acting within the course and scope of their official duties as employees of the MCDA and County in relation to this claim.

92.     Plaintiff is informed and does believe that Defendants MCDA and County had the right and/or power to direct and control the manner in which its employees and/or agents executed their duties.

### 3.     COUNTY JAIL MEDICAL PROVIDER- WELLPATH

93.     Plaintiff is informed and does believe that Defendants MCDA and County had the right and/or power to direct and control the manner in which its employees and/or agents executed their duties.

94.     Upon information and belief, because of their interrelation of operations, common ownership or management, significant contracts maintaining medical health services for the jails across the nation, Wellpath maintains proper staff with adequate certificates and licenses.

95.     Upon information and belief, with reliance on the Milwaukee County Board Records, Milwaukee County was aware of the insufficient healthcare services provided in Milwaukee County Jail, prior to hiring Wellpath.

96.     In addition, the County opted to cancel its contract with Armor Correctional Health Services, Inc., due to increased number of complaints and deaths involved in the county jail prior to seeking contracts with other providers.

14

97.     A reasonable person, for the purposes of introducing as a fact finder is defined as a reasonable person, an ordinary person of either sex, *not exceptionally excitable or pugnacious*, but possessed of such powers of self-control as everyone is entitled to expect that his/her fellow citizens will exercise in society as it is today.

98.     A reasonable person would assume the County Executives and Supervisor had selected a provider that is, and expected to be, better than the one previously secured.

### D.     <u>Individual Defendants</u>

99.     Individual Defendants listed on the Defendant List (Attached herein), are party to this action on their individual as well as official capacities.

100.    The Defendant Police Officers (hereinafter "Officers") upon information and belief are resident of Milwaukee County, were at all times relevant acting under color of law and in the course and scope of their duty as employee(s), agent(s), officer(s) of the Defendant Milwaukee Police Department and/or Defendant City of Milwaukee; and/or Milwaukee County Sheriff's Office ("MCSO");  and/or Milwaukee County District Attorney's Office ("MCDA").

101.    All Individual Defendants are part to this action for violation of Counts 1-21.

102.    All Corporate Defendants are part to this action for violation of Counts 1-21.

103.    All Governmental Defendants are part to this action for violation of Counts 1-21.

15

## IX.    FACTUAL BACKGROUND

104.    Plaintiff filed Original Complaint (ECF 1) on December 26, 2022. Pursuant to Fed. R. Civ. P. Rule 10(c), all the statements in the original pleading are adopted and incorporated by reference herein

## X.    SERIOUS MEDICAL NEEDS and HISTORY

105.    Plaintiff was first diagnosed with severe Sleep Apnea in 2016.

106.    Plaintiff requested FMLA time-off and Short-Term Disability through his employers in the past due to incapacitations.

107.    Plaintiff requested Reasonable Accommodations from his employer in the past and now.

108.    Plaintiff requested Reasonable Accommodations from Wellpath and County Jail.

109.    Wellpath and MCJ requested Plaintiff's medical history from his hospital and pharmacy.

110.    When Wellpath and MCJ received the information from the hospital and the pharmacy, they *"had subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction."*

111.    However, neither Wellpath nor MCJ took the necessary actions to "Provide adequate medical care".

112.    Defendants at that point, became "aware of acts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."

16

113.   Plaintiff was not supplied with a CPAP/APAP machine, which is widely used by individuals with sleep apnea, in order to keep the airways open throughout the night, preventing choking or even worse potential death.

114.   Plaintiff is a person with disability within the meaning of Rehabilitation Act of 1973, in that his impairment substantially interferes with the major life activities as described throughout the court records.

## XI.   SUMMARY OF CLAIMS

115.   Following the first arrest and subsequent legal hurdles, Plaintiff suffered significant health issues including but not limited to Physical and emotional pain, suffering from the harassment and retaliation by the defendants.

116.   Due to missing prescriptions and medical care, Al started to experience upper respiratory issues where he developed bacterial infections two separate times and prescribed with heavy antibiotics by an urgent clinic in December of 2019 and February of 2020.

117.   In addition to the respiratory issues, he had two separate slip and fall occasions which resulted with chronic backpain, injured knee and injuries to his lower back.

118.   He was forced to take a leave of absence in May 2020 through November 2020 unpaid.

119.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

17

## XII.  DEFENDANT'S ACTIONS

120.   Defendants issued false reports, false warrants, illegal arrest and detainment.

121.   Upon information and belief, similarly situated inmates were not subjected to the treatment Plaintiff had faced.

122.   MCDA Investigator Sarah Blomme falsified police reports in order to help her friend Tanya D. Karnick, in assisting, with getting Plaintiff arrested.

123.   Not only the police reports were falsified, but also Inv. Blomme lied on the stand during the Jury Trial conducted under Milw. Co. Case No. 19CF5571.

124.   She initially gave December 14, 2019, as the date she first met with Emily Kolcu, Plaintiff's wife at the time, during the Preliminary hearing in January of 2020.

125.   Three and a half (3.5) later her memories got refreshed, and she testified during the Jury Trial that she originally met Emily in May of 2019, more than six months earlier.

126.   Furthermore, she admitted that they had exchanged numbers or Emily was supplied by her number by others at the time. She never confirmed Emily's mom was her friend and that is how the number exchange had occurred.

127.   Inv. Blomme falsified her testimony under oath at least two times.

128.   In addition, due to the defendant's actions, and their conspiracy with individual citizens, it resulted with violations of Plaintiff's constitutional rights.

18

## XIII. ALLEGATIONS

**A. Count I- Violation of 42 U.S.C. § 1983-Failure to Provide Adequate Medical Care"**
*Violation of Eighth Amendment –*

129.   See Original Complaint (ECF 1) for exhibits and records. Each paragraph of this Complaint is incorporated as if rested fully herein.

130.   On March 7, 2001, Milwaukee County entered into a consent decree (the "Consent Decree") regarding conditions in the Milwaukee County Jail ("MCJ"). Among the conditions subject to the Consent Decree are the health services provided at the MCJ, including medical staffing levels and processing of inmate requests for medical attention, known as sick call slips. Dr. Ronald Shansky, a correctional healthcare expert, has monitored the MCJ's compliance with the Consent Decree and generated biannual reports since 2001. (22-1116, 7th Cir., 2022)

131.   David Clarke, the Milwaukee County Sheriff during the relevant period, oversaw the MCJ and tasked Richard Schmidt, an Inspector with the Milwaukee County Sheriff's Office, with the responsibility of overseeing Armor. Nancy Evans, the Jail Commander, was responsible for the day-to-day operations in the MCJ.  (Id. at ECF 34, at Pg. 2)

132.   Plaintiff seeks this Honorable Court hold the individual Defendants, in their individual capacity, responsible for the failure to provide adequate medical needs.

133.   Plaintiff relies upon the U.S. Laws on supporting what is adequate medical care. Plaintiff also relies upon the medical records he holds for a decade on what is adequate medical care.

19

134.    If this Honorable Court feels these notes, by about a dozen of licensed doctors, are not enough, then Plaintiff prays this Honorable Court allows the parties to confer for further discovery.

135.    Plaintiff hereby assert that the *"Monell paradigm should change in the context of a corporate contractor providing governmental services."* Shields v. Ill. Dep't of Corr., 746 F.3d 782, 800 (7th Cir. 2014)

136.    Furthermore, Plaintiff requests this Honorable Court overrule Iskander and its prodigy, applying Monell liability under respondeat superior doctrine, extending to Wellpath and its subsidiaries.

**B.   Count II- Violation of Fourteenth Amendment**
   **VIOLATION OF 42 U.S.C. § 1983 - Failure to Provide Adequate Medical Care**

137.    Plaintiff repeats paragraphs 128 through 135 herein with same effect. Each paragraph of this Complaint is incorporated as if rested fully herein.

138.    "'[W]hen the State takes a person into its custody and holds her there against her will, the Constitution imposes upon it a corresponding duty to assume some responsibility for her safety and general well-being.'" Ortiz v. City of Chicago, 656 F.3d 523, 531 (7th Cir. 2011) (quoting DeShaney v. Winnebago Cnty. Dep't of Soc. Serv., 489 U.S. 189, 199-200 (1989)).

139.    Thus, courts concluded the States and their governmental bodies, including MCJ, has duty to assume responsibility for inmate and detainee's well-being.

140.    Plaintiff demands a Jury-Trial for the fact-finders to consider the elements of responsibilities and scope of medical needs owed to Plaintiff.

20

141.    Facts that inform whether the denial of medical care was objectively unreasonable include:

"(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." Id. at 530 (citing Williams v. Rodriguez, 509 F.3d 392, 403 (7th Cir. 2007)).

142.    Plaintiff asserts that

(1) the MCJ Officials had notice of detainee's medical needs because they contacted the pharmacy where Plaintiff's over half a dozen prescriptions were sent by his doctors.
(2) He declared the seriousness of the medical needs to the jail officials as he went through a major surgery in his upper respiratory tract and was suffering from a major infection at the time of detainment;
(3) The scope of the treatment would not have created an undue hardship on jail or medical health provider since the medicine Plaintiff prescribed was common anti-biotics as well as inhalers or sort; In addition, he had a CPAP machine readily available for delivery;
(4) As far as administrative, penological or other concerns, Wellpath had duty to follow local, State and Federal Laws, as they committed under the contractual obligations, financial assistance, Federal Grants and any other subsidies involving services they were bound to provide.

143.    Claims from Wisconsin are governed by a six-year statute of limitations. Wudtke v. Davel, 128 F.3d 1057, 1061 (7th Cir. 1997). Therefore, Plaintiff's suit is considered timely.

144.    Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

21

### C. Count III - Violation of Eighth and Fourteenth Amendment  VIOLATION OF 42 U.S.C. § 1983 – Failure to Intervene

145.    Each paragraph of this Complaint is incorporated as if rested fully herein.

146.    Plaintiff suffered marital strains with his spouse during the relevant times.

147.    At all relevant times set forth in this Complaint, Plaintiff communicated with the courts and law enforcement with respect and diligence.

148.    Judicial powers failed to intervene with the violations.

149.    Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

### D. Count IV – Failure to Train and Supervise in Violation of Eighth and Fourteenth Amendment

150.    Each paragraph of this Complaint is incorporated as if rested fully herein.

151.    An inmate's right to adequate medical care is violated only when a jail official acts with "deliberate indifference" to "a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 827, 828, 114 S.Ct. 1970, 1974 (1994).

152.    Corporate Defendants secure large contracts with local, State and Federal Government with promises to provide proper medical care for the inmates.

153.    However, the judicial powers lack jurisdiction to charge the violators due to the extension of immunities.

22

154.   Nonetheless, it does not take away the medical responsibilities of the Corporate Defendants to provide adequate training for their staff.

155.   Wellpath administrators knew, or should have known, especially when securing hundreds of millions of funding from the government entities, that they had a duty to train their staff and ensure their staff maintain adequate licenses and credentials.

156.   Each State credentialing agencies ensure staff is well trained.

157.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

**E.   Count V – Negligence in <u>Violation of Eighth and Fourteenth Amendment</u>**

158.   Plaintiff repeats paragraphs 138 through 154 herein with same effect.

159.   Each paragraph of this Complaint is incorporated as if rested fully herein.

160.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

**F.   Count VI – <u>*Deliberate Indifference*</u> in <u>Violation of Fourth, Eighth and Fourteenth Amendment</u>**

161.   Each paragraph of this Complaint is incorporated as if rested fully herein.

162.   An inmate's right to adequate medical care is violated only when a jail official acts with "deliberate indifference" to "a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 827, 828, 114 S.Ct. 1970, 1974 (1994).

23

163.    Plaintiff can demonstrate via discovery process that the terms and conditions of the contract for the medical care services granted to Wellpath by Milwaukee County fails to meet the minimum standards set forth by the U.S. Laws.

164.    Dobbey v. Mitchell-Lawshea, 806 F.3d 938, 940 (7th Cir. 2015) *("[A] guard who is aware of complaints of pain and does nothing to help a suffering prisoner obtain treatment is likewise exhibiting deliberate indifference."*

165.    Williams v. Rodriguez, 509 F.3d 392, 403 (7th Cir. 2007) (identifying four factors that are relevant for ascertaining whether a defendant's conduct was objectively unreasonable:

> (1) whether the officer is given notice of the arrestee's medical need, whether by word or through observation of the arrestee's physical symptoms;
> (2) the seriousness of the medical need, though the severity of the medical condition need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendments;
> (3) the scope of the requested treatment; and
> (4) police interests, which is wide-ranging in scope and can include administrative, penological, or investigatory concerns.
> (citing Sides v. City of Champaign, 496 F.3d 820 (7th Cir. 2007)).

166.    Plaintiff prays this Honorable Court allows the discovery phase to start so he can demonstrate deprivation of medical treatment was "objectively" and "sufficiently serious".

167.    More people died in jail in the care of Wellpath in recent years than any other jail medical provider.

168.    Honorable Courts across the nation tends to give the Wellpath a "Jail-free card" per se, extending the absolute immunity of a municipality.

24

169. Almost no individual, pursuing Pro Se, hits the threshold of discovery process, to allow a "fact finder" to determine the extent of the allegations.

170. Plaintiff prays this Honorable Court allow a jury, as the fact finder, hear the details of the allegations.

171. [A] serious medical need is often defined as one that has been diagnosed by a doctor as requiring treatment or one that is so obvious that even a lay person would recognize the need for a doctor's attention. Hayes v. Snyder, 546 F.3d 516, 522 (7th Cir. 2008); Greeno v. Daley, 414 F.3d 645, 652-53 (7th Cir. 2005).

172. In cases where there is a delay of treatment or an interruption in treatment, the court will focus on the seriousness of the delay or interruption, not on the seriousness of the underlying condition. Conley v. Birch, 796 F.3d 742 (7th Cir. 2015) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, the plaintiff must offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm.") (quoting Jackson v. Pollion, 733 F.3d 786, 790 (7th Cir. 2013)).

173. "An official may not escape liability by 'refus[ing] to verify underlying facts that [s]he strongly suspect[s] to be true.'" (quoting Farmer v. Brennan, 511 U.S. 825, 843 n. 8 (1994))

174. Wellman v. Faulkner, 715 F.2d 269, 272 (7th Cir. 1983) (deliberate indifference can be evidenced by "proving there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." (quoting Ramos v.

25

Lamm, 639 F.2d 559, 575 (10th Cir. 1980))); Gil v. Reed, 381 F.3d 649, 663 n. 3 (7th Cir. 2004).

175.   Jail staff's offering of a second pillow in lieu of Sleep Apnea medicine and equipment is a gross departure from accepted medical standards or failure to follow prison medical care protocols. (See Collignon v. Milwaukee County, 163 F.3d 982, 989 (7th Cir. 1998))

176.   Plaintiff hereby request this Honorable Court overrule *Iskander* and its progeny on this point for consideration by the entire jury members.

177.   "Wexford could not escape liability by diffusing responsibility across its employees, and prisoners would be better protected from violations of their constitutional rights." Shields v. Ill. Dep't of Corr., 746 F.3d 782, 795 (7th Cir. 2014)

178.   Plaintiff presented sufficient details enough for a jury trial, indicating *"policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy."* ( Shields v. Ill. Dep't of Corr., 746 F.3d 782, 796 (7th Cir. 2014), citing Woodward, 368 F.3d at 927)

179.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

**G.   Count VII – *Bystander Liability* in <u>Violation of Eighth and Fourteenth Amendment</u>**

180.   Each paragraph of this Complaint is incorporated as if rested fully herein.

26

181.   To be liable under § 1983, a supervisor must be personally involved in the deprivation of a constitutional right. Matthews v. City of East St. Louis, 675 F.3d 703, 708 (7th Cir. 2012).

182.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

## H.   Count VIII - Violation of 42 U.S.C. § 1983 – Malicious Prosecution following Wrongful Arrest and Detention in Violation of Fourth Amendment

183.   Each paragraph of this Complaint is incorporated as if rested fully herein.

184.   Plaintiff also makes claims against Assistant District Attorneys. He alleges that these defendants "reviewed" and "authorized" or "notarized" the search warrant application that Inv. Blomme drafted despite the application containing false information.

185.   Prosecutors are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976).

186.   [A]bsolute immunity applies when a prosecutor "appears in court to present evidence in support of a search warrant application" but not when he "gives advice to police during a criminal investigation." Van de Kamp v. Goldstein, 555 U.S. 335, 343 (2009).

187.   The prosecutors are not entitled to absolute immunity for their alleged actions. Because reviewing and approving a search warrant application is an

27

investigative task, and not one in which the prosecutors were acting as officers of

the court, absolute immunity does not apply. See Van de Kamp, 555 U.S. at 342.

188.    They may be shielded by qualified immunity, but it is not appropriate

for the court to make that determination at the pleading stage. See Marten v.

Swain, 601 F. App'x 446, 449 (7th Cir. 2015) (citing Alvarado v. Litscher, 267 F.3d

648, 651 (7th Cir. 2001)).

189.    "When an arrest is judicially authorized . . . '[courts] presume the

validity of [the] warrant and the information offered to support it.' Whitlock v.

Brown, 596 F.3d 406, 410 (7th Cir. 2010) (Id.)

190.    That presumption, however, may be rebutted "on a showing that the

officer who sought the warrant knowingly or intentionally or with a reckless

disregard for the truth[] made false statements to the judicial officer and that the

false statements were necessary to the judicial officer's determination." Id.

191.    Plaintiff hereby alleges the Investigator Sarah Blomme knowingly and

intentionally made false statements on her police reports in order to help her

"friend" Tanya D. Karnick with arresting her daughter's husband (Plaintiff) during

his rightful judicial proceedings, not once but twice. And, detailed as follows;

192.    Inv. Blomme falsified reports (MPD Incident # 19-3640065, Dated Dec.

14, 2019) on following items;

- Page 1; Checked "No" for the "Language" section where it reads "… or
  suspect speaks English as a 2nd language". Both Plaintiff's wife of twelve
  years and the Investigator knew Plaintiff is an immigrant with English as
  a second language. This eliminated the opportunity for the Plaintiff to
  seek the proper communication and option to speak clearly.

28

- Page 2; Picked four (4) "Positive Responses" which triggered the protocol for referral to her Sensitive Crimes Division.
  - ○ "Does he have a gun?"
  - ○ Is he violently jealous?
  - ○ Have you left him?
  - ○ Does he spy on you?

193.   On December 14, 2019, Inv. Blomme picked these four responses in order to initiate a search warrant for Plaintiff so he is unable to join the divorce hearing.

194.   It appears from the initial investigation of MCDA that the ADA presented the alleged conduct as a Misdemeanor. Inv. Blomme needed more allegations from the victim (Plaintiff's wife at the time) and instructed them to make false confessions to ADA Sam Tufford on December 16, 2019, so tthat he can turn their complaint into a Felony Charge so she can issue a search warrant for Plaintiff.

195.   Subsequently, Inv. Blomme falsified police reports on December 16, 2019. The report now (then) read that Plaintiff followed the victim and her mother to MCDA's Office without their consent and that his stalking was escalating.

196.   At all times relevant during these complaints taking place, Plaintiff had moved out of their marital property willingly and had chosen to live his life as a single-father.

197.   He had already moved out in first week of November of 2019. He had chosen not to pursue a relationship with his spouse due to her substance and alcohol abuse.

29

198. Plaintiff hired a divorce lawyer to request drug testing at the first divorce hearing which was scheduled for December 17, 2019.

199. Inv. Blomme, along with Plaintiff's wife and mother-in-law,

200. Inv. Blomme falsified reports in order to arrest Plaintiff the first time during his divorce proceedings, under 19FA6662, on December 17, 2019.

201. Inv. Blomme falsified reports in order to secure a warrant for Plaintiff using this "Stalking Case No 19CF5571" on December 17, 2019.

202. Inv. Blomme falsified reports in order to arrest Plaintiff the second time during his jury trial proceedings, under 19CF3754, on September 26, 2022.

203. *"And when the prisoner has been convicted by guilty plea, rather than through a trial, [t]he validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized."* Id. (quoting Haring v. Prosise, 462 U.S. 306, 321, (1983))

204. Plaintiff joined dozens of hearings and the court attempted over eight jury trials which were cancelled for reasons other than Plaintiff's own.

205. The ninth jury trial resulted with dismissal od domestic violence accusations under Stalking, however, due to the Honorable Judge Havas' limitations, of the use of standard jury instructions, Plaintiff ended up with a misuse of a GPS device resulting with a misdemeanor.

206. Plaintiff received this charge solely because buying a phone for his minor child DURING and WHILE they were married.

30

207.    Honorable Judge Havas did not allow Plaintiff's defense lawyer to use the exemptions to Wis. Stats. Which allows the use of GPS device for locating a minor. Even if the iPhone Plaintiff purchased was the third phone he bought for his daughter over the course of last 5 years.

208.    Therefore, Plaintiff includes Judge Havas in this suit for deprivation of his rights secured under State and Constitutions or the laws of the United States while she was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015)

209.    Plaintiff prays that This Honorable Court "construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers." Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

210.    Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

I.    **Count IX - Violation of 42 U.S.C. § 1983 – Improperly Seized Evidence**

211.    Each paragraph of this Complaint is incorporated as if rested fully herein.

212.    The Supreme Court has held that "a state prisoner's § 1983 action is barred (absent prior invalidation)

213.    The Seventh Circuit has held, however, that Heck's bar does not apply to "'a prisoner's challenge that threatens no consequence for his conviction or the

31

duration of his sentence.'" Mordi v. Zeigler, 870 F.3d 703, 707 (7th Cir. 2017) (quoting Muhammad v. Close, 540 U.S. 749, 751 (2004)).

214. And when the prisoner has been convicted by guilty plea, rather than through a trial, "'the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized.'" Id. (quoting Haring v. Prosise, 462 U.S. 306, 321, (1983)).

215. Plaintiff contests the conduct of state officials that led to his arrest, state-court criminal prosecution, conviction and sentence were in violation.

216. Plaintiff challenges not only the falsified warrants, warrantless entries, falsified police reports but also the validity of the convictions.

217. Plaintiff relies on records of the State Court proceedings and discovery material that was shared thus far.

218. Plaintiff notes that the most recent discovery request and Open Records Requests revealed that MCDA's Office had committed Brady material violation by concealing material evidence from Plaintiff's defense lawyer in purpose.

219. MPD open records revealed that MPD had more records supplied regarding the false allegations Plaintiff's wife (at the time), Emily Kolcu, and her mother Tanya D. Karnick who is a retired police sergeant with Wauwatosa Police Department who has worked with numerous of individuals at the Sensitive Crimes Division of MPD and MCDA's Office, including but not limited to Inv. Sarah Blomme.

32

220.   Inv. Sarah Blomme, in fact, initiated the two criminal cases against Plaintiff in order to "assist" her friend Tanya with her daughter's divorce case by providing falsified police reports, in which some of these documents were not supplied by the Assistant District Attorney(s) ("ADA"), Sam Tufford, Claire Zyber and Michelle Grasso.

221.   Therefore, Plaintiff herein alleges Brady Material Violations committed by the ADA and MCDA's Office.

222.   Furthermore, Plaintiff brings this suit against the Milwaukee County, MCSO, MCDA's Office, MCDA and ADA, individually, jointly and severaly.

223.   [T]he § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury . . . which . . . does not encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." Heck, 512 U.S. at 487 n.7 (citing Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986)).

224.   Plaintiff has records of medical visits and doctor reports presenting injury following his arrest, especially after the inadequate medical care at the Milwaukee County Jail.

225.   Therefore, Plaintiff seeks One (1) Million USD from each entity and each individual defendant as their actions caused great harm to Plaintiff physically, mentally and financially.

226.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

33

**J.   Count X – Discrimination and Retaliation**
**VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964**

227.   Each paragraph of this Complaint is incorporated as if rested fully herein.

228.   Plaintiff , within the last 28 pages, supplied records throughout the history of this case that Defendants engaged in unlawful practices with reckless indifference to his federally protected rights.

229.   As a direct and proximate cause of Defendants' actions to retaliate against Plaintiff and create an intimidating, hostile and offensive environment, Defendants have caused Plaintiff to suffer compensatory damages, including, but not limited to, loss of wages, loss of employment, mental anguish, pain and suffering, humiliation, embarrassment, degradation, loss of reputation, attorney fees and other expenses as allowed by law.

230.   Defendants' conduct was willful, in that they knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by Title VI of the Civil Rights Act of 1964.

231.   The Defendants' reckless indifference in intentionally discriminating against Plaintiff and intentionally failing to remedy or prevent Due Process for Plaintiff entitles him to punitive damages.

232.   State officials are sued in their individual capacity for damages, and in their official capacity for injunctive relief.

233.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

34

**K.** <u>**Count XI- Violation of 42 U.S.C. § 1985 – Inflicting Emotional Distress**</u>

234.   Each paragraph of this Complaint is incorporated as if rested fully herein.

235.   Plaintiff Defendants conspired together to deprive Plaintiff of the equal protection of the laws when they imposed terms and conditions of judicial process on Plaintiff.

236.   As a result of Defendants' actions, Plaintiff suffered damages.

237.   Defendants shall be liable to Plaintiff for all damages caused by their wrongful acts.

238.   Pursuant to 42 U.S.C. § 1985, Defendants had knowledge of the wrongs conspired to be done, had power to prevent or aid in preventing the commission of the wrongs, but neglected or refused to do so.

239.   As a result of Defendants' actions, Plaintiff suffered damages.

240.   As outlined in 42 U.S.C. § 1986, Defendants shall be liable to Plaintiff for all damages caused by their wrongful acts.

241.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

**L.   Count XII-**
<u>**Violation of Title II of the Americans with Disabilities Act ("ADA") of 1990**</u>

242.   Each paragraph of this Complaint is incorporated as if rested fully herein.

243.   A major ADA goal is to end disability discrimination by public and private actors. Tittle II applies to State and County entities.

35

244.    The ADA's implementing regulations also prohibits discrimination against you because of your association with a person with a disability. 28 C.F.R. § 35.130(g) (2020); Niece v. Fitzner, 922 F. Supp. 1208, 1216 (E.D. Mich. 1995) (finding a possible ADA violation when prison officials refused to make accommodations for an incarcerated person to communicate with his deaf fiancée).

245.    Americans with Disabilities Act, 42 U.S.C. § 12131(1)(A)–(B) (defining "public entity" as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government.

246.    Plaintiff supplied records, within the last 28 pages and throughout the history of this case that Defendants engaged in unlawful practices with reckless indifference to his federally protected rights.

247.    As a direct and proximate cause of Defendants' actions to retaliate against Plaintiff and create an intimidating, hostile and offensive environment, Defendants have caused Plaintiff to suffer compensatory damages, including, but not limited to, loss of wages, loss of employment, mental anguish, pain and suffering, humiliation, embarrassment, degradation, loss of reputation, attorney fees and other expenses as allowed by law.

248.    Defendants' conduct was willful, in that they knew and/or showed reckless disregard for the matter of whether its conduct, described above, was prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, and the Civil Rights Act of 1991, 42 U.S.C. §1981 et seq.

36

249.   The Defendants' reckless indifference in intentionally discriminating against Plaintiff and intentionally failing to remedy or prevent equal employment opportunities for Plaintiff entitles him to punitive and other damages.

250.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

### M.  Count XIII- Discrimination based on disability
### Violation of Section 504 of the Rehabilitation Act of 1973

251.   Each paragraph of this Complaint is incorporated as if rested fully herein.

252.   Section 504 guarantees that anyone qualified to participate in a program, service, or activity will have meaningful access to it when it is offered either by the federal government or by a state or local recipient of federal funds.

253.   The actions of the defendants show violation of  29 U.S.C. § 794(a), Rehabilitation Act of 1973.

254.   Alexander v. Choate, 469 U.S. 287, 301, 105 S. Ct. 712, 720, 83 L. Ed. 2d 661, 672 (1985) (noting that Section 504 requires state and local governments receiving federal aid to provide "meaningful access to the benefit" they offer), superseded by statute on other grounds, 28 C.F.R. §§ 35.160–35.164 (2020), 28 C.F.R. § 42.503(e)–(f) (2020).

255.   Under Section 504, a "program or activity" is defined broadly to include "all of the operations" of a state or local government.

256.   Rehabilitation Act of 1973, 29 U.S.C. § 794(b)(1)(A)–(B) (2012) (defining program or activity as "all of the operations of a department, agency,

37

special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government").

257.   Plaintiff requests injunction correcting the violations occurring daily by these defendants.

258.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

**N.   Count XIV- <u>Discrimination against National Origin</u>**
**<u>Violation of Title II of Civ. R. Act of 1990 –.</u>**

259.   Each paragraph of this Complaint is incorporated as if rested fully herein.

260.   Plaintiff was harassed and retaliated numerous times during the course of circuit court hearings. And he shared details with MCDA

261.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

**O.   Count XV- Violation of First Amendment Rights – Retaliation**

262.   Each paragraph of this Complaint is incorporated as if rested fully herein.

263.   Plaintiff was harassed and retaliated numerous times during the course of circuit court hearings. And he shared details with MCDA.

38

264.   Nonetheless, MCDA Inv. Blomme secured subsequent search warrants for Plaintiff, falsified reports

265.   Inv. Blomme secured a search warrant to place a GPS tracker on Plaintiff's vehicle even If she knew he was not pursuing a dialog with his ex-wife.

266.   Regardless, in February of 2020, she secured the aforementioned warrant to place a GPS tracker on Plaintiff's vehicle and concealed the documents from Plaintiff's defense lawyer throughout the course of the judicial hearings.

267.   Furthermore, in order to conceal the methods and techniques used by her office, Inv. Blomme deleted video surveillance records held in Plaintiff's Network Video Recording ("NVR") Device.

268.   When Plaintiff was finally supplied with the discovery materials under 19CF5571 it revealed the concealed document showing the GPS records of Plaintiff's vehicle including but not limited to the addresses he visited and how fast he drove in between.

269.   Plaintiff immediately went back to the date on his NVR record and discovered the records were deleted for those days.

270.   First, Plaintiff called MPD who dispatched Officer Sloans (ID# 031456) who called from phone number (414) 445-2624, and refused to file a report.

271.   Plaintiff notified Federal Bureau of Investigations ("FBI") and filed a complaint via online form # IC3, on November 17, 2022, with details.

272.   Plaintiff has reasonable suspicion as to the allegations set forth here because the illegal extraction of his cell phone data records indicates that MCDA,

39

and specifically Inv. Blomme, had access to the record identifying Plaintiff's

password, keys, certificates and over 70 passwords stored in his iCloud account.

273.   This Extraction was performed by Inv. LaGosh and shared as evidence.

274.   Plaintiff requests this Honorable Court to enter a Judgement against

the Defendants as outlined in the Section XV- Damages, and as it may find fit.

**P.   Count XVI- Violation of 7 CFR Part 1734**

275.   Each paragraph of this Complaint is incorporated as if rested fully

herein.

276.   The U.S. Department of Justice ("DOJ") published the online data

which applies to federal contractors and subcontractors performing contracts for

DOJ, including medical care services.

277.   For the purposes of federal compliance as a contractor, Corporate

Defendants are a Federal Contractor within the meaning of the relevant laws, as

amended, and has the capacity to sue and be sued in this Court.

278.   In example, Wellpath secured a federal Grant for training its staff via

telemedicine and received funding in the amount of $250,000 as a financial

assistance to improve and invest training. (*See the link below;*

(https://www.usaspending.gov/award/ASST_NON_CLSS00000082545_12E2)

279.   Wellpath received hundreds f millions USD in federal payments for the

jail services across the nation. 7 CFR Part 1734 governs this program.

280.   41 CFR Part 60 governs the Obligations of Contractors and Sub-

Contractors.

40

281.    Title 31 1352 governs the compliance of these contractors.

282.    Per Title 7 § 1734.41, the following are approved purposes for loans: "(a) .... (e) Providing links between teachers and students or medical professionals who are located at the same facility, provided that such facility receives or provides distance learning or telemedicine services as part of a distance learning or telemedicine network which meets the purposes of this subpart;"

283.    When it comes to receive funding, Wellpath and its subsidiaries seem to understand the obligations to the compliance of contractual limits.

284.    In fact, aforementioned contract has its following clause; *Section 2.1(e) Compliance with Laws. The Grantee is in compliance in all material respects with all federal, state and local laws, rules, regulations, ordinances, codes and orders (collectively, "Laws.").*

285.    *See Section 5.10;* "The Grantee will comply with all applicable federal statutes, regulations and requirements that govern the Application, the Project, and use of federal grant funds for this Grant."

286.    ***See Section 5.11(c) -*** **Codes of Conduct**; The Grantee shall maintain written standards of conduct governing the performance of its employees engaged in the award and administration of contracts in accordance with 2 C.F.R. part 200.

287.    ***See Section 8.4 - Governing Law;*** This Agreement shall be governed by and construed in accordance with applicable federal law, and in the absence of

41

controlling federal law, by the laws of the State identified in the first paragraph herein, except those that would render such choice of law ineffective.

288.   Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, Corporate Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

289.   At all times relevant herein, Defendants acted by and through their agents servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants, except listed otherwise.

290.   The Defendants' actions were under color of the authority of the Federal Government, when they deprived Plaintiff of his rights, privileges and immunities under the Equal Protection Clause as secured by the U.S. Constitution by engaging in unlawful medical practices by suspending, discharging, and otherwise intentionally discriminating against Plaintiff with respect to terms, conditions, and privileges of their medical contract because of Plaintiff's Disability, National Origin (Turkish), Religion (Alevi-Muslim), and Age, in violation of 42 U.S.C. §1983.

291.   Defendants' actions were the direct and proximate result of the Plaintiff's damages.

42

292.   Defendants' actions have caused Plaintiff to suffer compensatory damages, including but not limited to loss of employment, mental anguish, emotional pain, loss of reputation, attorneys' fees and other expenses as allowed by law.

293.   As a direct and proximate result of Defendants' malicious and reckless actions in depriving Plaintiff of his equal protection rights as provided by the U.S. Constitution in violation of 42 U.S.C. § 1983, Plaintiff is entitled to punitive damages against the Corporate Defendants.

294.   Regarding the individually named Defendants, they had a legal duty to act to prevent the misdeeds Plaintiff faced, and their failure to act amounted to gross negligence or deliberate indifference of Plaintiff's rights.

295.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

## Q. Count XVII- Interception of Wire and Electronic Communications Violation of 18 U.S.C §§ 2510 et seq. - Eavesdropping

296.   Each paragraph of this Complaint is incorporated as if rested fully herein.

297.   During the relevant times at Plaintiff's judicial proceedings, his home, cellphone, vehicle, wi-fi, iCloud/Apple accounts were monitored by MCDA Office.

298.   Plaintiff, via his lawyer, presented these records to the Assist. DA.

299.   Plaintiff has reasonable suspicion that Inv. Blomme and her supervisor altered the policies and started recording Plaintiff's phone illegally.

300.   At all times during the interception period — May, 2019 through December, 2023 — any person whose wire, oral or electronic communication is intercepted, disclosed or intentionally used may recover in a civil action from the person or entity engaged in the violation pursuant to 18 U.S.C. § 2520.

301.   On information and belief, at all times during the interception period, Inv. Blomme had illegally intercepted Plaintiff's data.

302.   and improperly disclosed and used the communications between Kolcu and others, for improper purposes, including without limitations, defending civil rights claims filed by Plaintiff, in violation of 18 U.S.C. §§ 2510 et seq.

303.   The Defendant did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring the Plaintiff from an improper and evil motive amounting to malice and in conscious disregard of the Plaintiff's rights.

304.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

### R.   Count XVIII- Willful Deprivation of Constitutional Rights - 18 U.S.C. §§ 241

305.   Each paragraph of this Complaint is incorporated as if rested fully herein.

306.   Plaintiff held that circuit court judges deprived Plaintiff from his constitutional rights on questioning the victim, Def #33, and State's only victim for Domestic Violence ("DV") Case 19CF5571, on January 8, 2020.

44

307.   During the preliminary hearing for this DV case there were critical elements of the false allegations Plaintiff's [ex]-wife claimed along with her mom and her mom's friend Inv. Blomme.

308.   Supposedly Plaintiff placed a cell phone in his wife's vehicle, in the seat pocket, in order to induce her emotional stress. Plaintiff's counsel, having discussed the elements of the crime and the fact that Plaintiff's mother-in-law is a retired police sergeant with connections in the MCDA's Office, came up with precise questions in order to show that the probable cause standard has not been established. (See Preliminary Hearing transcript dated March 26, 2020.)

309.   However, Honorable Judge Kies did not allow him to ask the questions to pin-point the flaws in their complaint, thus depriving Plaintiff of his rights.

310.   For a specific example to the above paragraph, and as Preliminary Transcripts reveals (Id. at Pg 20), that Torphy was shut down when he asked Def #33, "So at what point did you approach Inv. Blomme or police?"

311.   State objected to relevance at which point Judge Kies sustained.

312.   Subsequently, Torphy was shut down on numerous attempted questions by Honorable Judge, eventually ordering him cut-off cross-examination by invoking Wis. Stats. 906.11- (1) Control by Judge.

313.   For a specific example to the above Def #33 answered "No" when asked If Plaintiff has ever been violent to her. That didn't matter for the judge or DA.

314.   Eventually, Judge Kies concluded the cross-examination, despite Plaintiff's Connotational Rights, as well as State Rights under Wis. Stats. 906.11(2).

45

315.   In the following months the reasons behind Judge's attitude was clear.

316.   By then, contrary to the Judicial Canons, Judge Kies had communicated with ADA Tufford, who is a party to this suit as Def #13.

317.   Tufford told Torphy that "Judge Kies thinks your client (Plaintiff) is probably overly jealous and controlling because he is from Middle-East".

318.   And jokingly, Tufford tells Torphy that he even showed the transcripts to his wife and asked for her opinion; "(…) at the end we (men) are all controlled by our wives and belts." Tells Torphy laughingly. Not realizing Tufford, at this moment, abdicated his legal authorities.

319.   As Tufford's actions and statements appear to be outside of the scope of his employment, Plaintiff thereby includes Tufford in his Individual Capacity in addition to his official capacity.

320.   The truth only came up after three and a half (3.5) years later during the Jury-Trial for this DV case; It was May of 2019, when Defendants collectively started cooking their witchcraft. Seven months before the first arrest.

321.   Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

S.   <u>Count XIX - Violation of 42 U.S.C. § 1983 – FALSE ARREST</u>

322.   Each paragraph of this Complaint is incorporated as if rested fully herein.

46

323.    Plaintiff brings this suit under Fourth Amendment Rights, as, [A] claim for false arrest asserts that there was no probable cause to support the arrest. Neita v. City of Chicago, 830 F.3d 494, 497 (7th Cir. 2016).

324.    [f]alse imprisonment alleges an unlawful detention that is not supported by probable cause. Hawkins v. Mitchell, 756 F.3d 983, 994 (7th Cir. 2014).

325.    An arrest occurs when, viewing all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Fox v. Hayes, 600 F.3d 819, 833 (7th Cir. 2010).

326.    However, Plaintiff wasn't given a chance to even argue about the elements of probable cause

327.    An excessive force claim accrues immediately at the time of the alleged incident, while a false arrest and false imprisonment claim accrues at the time the person is brought before a magistrate or arraigned on charges. Wallace, 549 U.S. at 396; Neita v. City of Chicago, 830 F.3d 494, 498 (7th Cir. 2016); Parish v. City of Elkhart, 614 F.3d 677, 681 (7th Cir. 2010).

328.    Therefore, Plaintiff's claims are considered timely.

329.    Since [p]laintiff does not know the identity of a defendant, (s)he may initially name the defendant as a John Doe, and also name a supervisory official as a defendant for the purpose of conducting discovery to identify the John Doe. Donald v. Cook County Sheriff's Dep't., 95 F.3d 548, 556 (7th Cir. 1996).

47

330.     "the statute of limitations can be equitably tolled.  The Court will look to the equitable tolling rules from the state where the alleged constitutional violation occurred."  Moore, 771 F.3d at 447-48.

331.     Plaintiff demands relief as outlined in the Section XV – Damages.

**T.     Count XX - Violation of 29 U.S.C. § 2612 – Obstructing Justice**

332.     Each paragraph of this Complaint is incorporated as if rested fully herein.

333.     Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

**U.     Count XXI- Violation of HIPAA**

334.     Each paragraph of this Complaint is incorporated as if rested fully herein.

335.     Plaintiff held custody of his children and related documentation in his phone. At the time of Plaintiff's arrest under Milw. Co. Case No. 19CF5571 for allegations of stalking his wife, Inv. Blomme confiscated Plaintiff's phone as well as the phone Plaintiff had purchased for his daughter.

336.     In violation of HIPAA Laws, 45 CFR Section 164.510, MCDA's Office along with the individual Defendants shared Plaintiff's son's Protected Health Information ("PHI"). *See* Pg 6 of 12, MCDA Incident Report #19-000246, dated Dec. 14, 2019. Report created by Defendant #20, Inv. Blomme, Payroll #153076.

337.     The pictures and details shared in the police reports are related to Plaintiff's son's mental health records and prescription information.

48

338.    These PHI were shared in the subsequent Incident Reports and court filings without the consent from Plaintiff. The reports were reviewed and approved by Defendant #21, Robert Stelter Payroll #144758.

339.    These PHI were extracted from Plaintiff's and his daughter's phone by Def. #22, Ron LaGosh, Payroll#147547.

340.    Illegal and false search warrant was issued by Def. # 29, Hon. Judge Janet Protasiewicz, on or around December 17, 2019 under Case #19CF5571.

341.    *"A covered entity may disclose protected health information to comply with a court order, including an order of an administrative tribunal. Such disclosures must be limited to the protected health information expressly authorized by the order."* See 45 CFR 164.512(e)(1)(i).

342.    Not only the MCDA's Office disclosed Plaintiff's health information, but also shared pictures of his son's medical records, including but not limited to the prescriptions. These are pure violations of Plaintiff's HIPAA Privacy Rights.

343.    In some cases, the Privacy Rule permits a covered entity to reasonably rely on the representations of a lawyer who is a business associate or workforce member that the information requested is the minimum necessary for the stated purpose. See 45 CFR 164.514(d)(3)(iii)(C).

344.    Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

49

### V. <u>Count XXII- Judicial Cannon Violations – by Janet Protasiewicz</u>

345.    Each paragraph of this Complaint is incorporated as if rested fully herein.

346.    Illegal and false search warrant was issued by Def. # 29, Hon. Judge Janet Protasiewicz, on or around December 17, 2019 under Case #19CF5571.

347.    Furthermore, same judge approves a Warrant for placing a GPS device on Plaintiff's vehicles, on or around February of 2020.

348.    Hon. Judge Janet Protasiewicz, later on, gets assigned to Plaintiff's divorce case under Milw. Co. Family Case #19FA6662, on July 31, 2021.

349.    "De minimis" means an insignificant interest that does not raise reasonable question as to a judge's impartiality or use of the prestige of the office. See SCR Chapter 60

350.    (4)(a)  The judge has a personal bias or prejudice concerning a party or a party's lawyer or personal knowledge of disputed evidentiary facts concerning the proceeding.  See SCR Chapter 60.04

351.    (6)  A judge required to recuse himself or herself under sub. (4) may disclose on the record the basis of the judge's recusal and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive recusal. If, following disclosure of any basis for recusal other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be required to recuse himself or herself and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding. (Id.)

50

352.    Judge Protasiewicz does not follow any of the aforementioned judicial canons.

353.    The Fourteenth Amendment to the U.S. Constitution provides in part that no state may "deprive any person of life, liberty, or property, without due process of law."

354.    The due process concept also can be found in Wis. Const., art. I, s. 1, which provides in part that;

*All people are born equally free and independent, and have certain inherent rights; among these are life, liberty, and the pursuit of happiness....*

355.    Collectively, Corporate and Individual Defendants, deprived Plaintiff of his constitutional rights in violation of First, Fourth, Fifth, Eighth, Fourteenth Amendments.

356.    Plaintiff was not supplied with the illegal warrant details or which judges approved those warrants during his divorce case. Therefore, he could not have anticipated an impartial judgement.

357.    Plaintiff could not have been expected to request fair trial which is guaranteed by the Due Process Clause. Therefore, by hideous techniques MCDA's Office and Milwaukee County Court System violated Plaintiff's aforementioned constitutional rights.

358.    In fact, Honorable Judge Protasiewicz was on the radar for the Wisconsin State Assembly for potential impeachments due to her public comments on issues as well as history of non-recusal, upon sworn into Wis. Supreme Court.

51

359.   Last time State Assembly discussed impeachment of a judge was over a hundred and seventy (170) years ago. And Plaintiff can closely relate as to why others felt the same.

360.   *"We conclude that a court's failure to inform a juvenile of the right to judicial substitution does not affect its competency and warrants reversal only if the juvenile suffers actual prejudice."* See In the Interest of Kywanda F., 200 Wis. 2d 26, 546 N.W.2d 440, 445 (1996), recon. den. 204 Wis. 2d 326, 555 N.W.2d 129 (citing the due process guarantee in the Fifth Amendment to the U.S. Constitution).

361.   "Public confidence in the judiciary is eroded by irresponsible or improper conduct of judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly." SCR 60.

362.   Plaintiff supplied herein, a great loss of health, his constitutionally protected custodial and parental rights after Defendant's collective effort on defaming, falsely arresting, denying Due Process and denying medical needs of Plaintiff.

363.   Furthermore, the family court ordered Plaintiff to reassess his home value. The home Plaintiff purchased few years earlier for $50K was assessed at about $200K and Plaintiff was ordered to pay the difference to his wife at the time.

364.  Declined health, repossessed vehicle, foreclosed home and never-ending liens on Plaintiff's personal properties resulted with filing of Chapter 13 in U.S. Bankruptcy Court in Eastern District of Wisconsin.

365.  Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

W.  **Count XXIII - Judicial Cannon Violations – by Hon. Judge Jean Kiess**

366.  Each pargh. of this Complaint is incorporated as if rested fully herein.

367.  A judge must perform judicial duties impartially and fairly. A judge who manifests bias on any basis in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute. Facial expression and body language, in addition to oral communication, can give to parties or lawyers in the proceedings, jurors, the media and others an appearance of judicial bias. A judge must be alert to avoid behavior that may be perceived as prejudicial.

368.  (e) A judge shall perform judicial duties without bias or prejudice. A judge may not, in the performance of judicial duties, by words or conduct, manifest bias or prejudice, including bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status, and may not knowingly permit staff, court officials and others subject to the judge's direction and control to do so. See SCR 60.04(e)

369.  **(f)** A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic

53

status against parties, witnesses, counsel or others. This subsection does not preclude legitimate advocacy when race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status or other similar factors are issues in the proceeding. **(g)** A judge may not initiate, permit, engage in or consider ex parte communications concerning a pending or impending action or proceeding except that: **(1.)** A judge may initiate, permit, engage in or consider ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits if all of the following conditions are met:

370.  (4.) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to settle matters pending before the judge.

371.  A judge must not independently investigate facts in a case and must consider only the evidence presented.

372.  A judge must make reasonable efforts, including the provision of appropriate supervision, to ensure that SCR 60.04 (1) (g) is not violated through law clerks or other personnel on the judge's staff.

373.  If communication between the trial judge and the appellate court with respect to a proceeding is permitted, a copy of any written communication or the substance of any oral communication should be provided to all parties. (Id.)

374.  (hm) A judge shall uphold and apply the law and shall perform all duties of judicial office fairly and impartially. A judge shall also afford to every

54

person who has a legal interest in a proceeding, or to that person's lawyer, the right to be heard according to the law. A judge may make reasonable efforts, consistent with the law and court rules, to facilitate the ability of all litigants, including self-represented litigants, to be fairly heard. (Id.)

375.    (j) A judge may not, while a proceeding is pending or impending in any court, make any public comment that may reasonably be expected to affect the outcome or impair the fairness of the proceeding. The judge shall require court personnel subject to the judge's direction and control to similarly abstain from comment. (Id.)

376.    (o)(2) (a) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business. (Id.)

377.    (4) Except as provided in sub. (6) for waiver, a judge shall recuse himself or herself in a proceeding when the facts and circumstances the judge knows or reasonably should know establish one of the following or when reasonable, well-informed persons knowledgeable about judicial ethics standards and the justice system and aware of the facts and circumstances the judge knows or reasonably should know would reasonably question the judge's ability to be impartial.

378.    Plaintiff requests this Honorable Court to enter a Judgement against the Defendants as outlined in the Section XV- Damages, and as it may find fit.

## XIV.  CONCLUSION and REQUEST FOR JURY TRIAL

379.   Plaintiff Pursuant to Amendment 7 of the United States Constitution (and Rule 38(b) Fed. R. Civ. P., Rule 81(c) Fed. R. Civ. P.), Plaintiff respectfully requests that this honorable Court grant him a trial by jury on all issues so triable.

380.   In sum, the objectives of reasonableness, of a fact finder, are

    (1)      Protecting individuals from unjustified conducts by exposing them only to expected behaviors;

    (2)      Setting a standard of conduct manifesting the social moral norms; and

    (3)      Educating public of the proper and acceptable standard of behaviors.

381.   Plaintiff feels, today's objectives of reasonableness of the judicial powers do not reflect the objectivity of the reasonable person standard manifesting the cumulative moral sense of the community.

382.   Many individuals were shot by the police officers, and so many protests needed in order to bring the today's standard of body cameras expected of the police enforcement.

383.   No one talked about the Elephant in the Room during these protests. We all were so angered and pursued charges against individual officers.

384.   Plaintiff hopes this Honorable Court allows Plaintiff's Constitutional Rights to take priority over judicial immunity, and therefore, start the discovery process.

385.   Plaintiff feels it is about time this society turns the lights on, and allow the Elephant in the Room to scream the reality hidden behind closed doors.

## XV.   DAMAGES and PRAYER FOR RELIEF

386.   Living in the era of recognizing the Police Brutality, this society come to recognition of having body cameras of police force.

387.   What this society still struggle to recognize is the Giant Elephant In The Room, the broken judicial system that fails to protect the citizens from corrupt government that hides behind cameras, closed doors and multiple layers of immunities.

388.   Plaintiff has been patiently complying with the orders from all the state courts, and hearings he has been joining several times a month, reporting to two different parole officers, has given up his freedom of travel as a result of collective actions of ALL Defendants.

389.   Plaintiff had contacted numerous lawyers for help in defending his constitutional rights, to the no avail.

390.   Today, and eventually, Plaintiff made a decision to pursue his constitutional rights, the rights that encouraged him to make a move to relocate over five thousand miles, permanently.

391.   And, therefore, just like he grew up doing, learned to get up on his own and move along, submitting this suit against ALL Defendants as a Pro Se Plaintiff.

392.   Plaintiff prays that this case shines a light on how corrupt the government agencies get, and bring transparency to judicial powers.

393.   Plaintiff prays that this Honorable Court allow him to remove the tape from the mouth of Elephant in the Room, and allow freedom of speech.

57

394. WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgement in favor of Plaintiff and against Defendants on all claims herein, and enter an Order providing the following relief:

A. a declaratory judgment that Defendants' actions, policies, and procedures violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq., and the Civil Rights Act of 1991, et. seq., 42 U.S.C. §1981;

B. a declaratory judgment that Defendants' actions, while acting under color of law, have caused Plaintiff to suffer from discrimination and retaliation because of his Religion, National Origin, Disability and gender, in violation of the Fourteenth Amendment of the U.S. Constitution in violation of 42 U.S.C. §1983;

C. a declaratory judgment that Defendants' actions, while acting under color of law, have subjected Plaintiff to arbitrary and capricious treatment in violation of his equal protection rights as entitled under the Fourteenth Amendment of the U.S. Constitution and the laws of the United States of America in violation of 42 U.S.C. §1983;

D. a declaratory judgment that Defendants' actions, while acting under color of law, violated 42 U.S.C. §1985;

E. a declaratory judgment that Defendants' actions, while acting under color of law, violated 42 U.S.C. §1986;

F. an award for Plaintiff granting back pay and front pay, including interest, in the form of lost wages, including lost benefits, which resulted from the illegal discrimination, harassment and arrests.

58

    **G.**     an award for Plaintiff the cost of this action, together with reasonable attorney's fees (if any)

    **H.**     an award for Plaintiff the medical bills exceeding $250,000.00 that are unpaid by the Defendant's Benefit Administrators.

    **I.**     a permanent injunction against Defendants and their officers and employees from engaging in any policy or practice that discriminates against any citizen on the basis of race, national origin, religion, disability or age;

    **J.**     a permanent injunction against Defendants and their officers and employees from engaging in any policy or practice that retaliates against any citizen because they file complaints with the court;

    **K.**     a permanent injunction against Defendants and their officers and employees from allowing an intimidating, hostile and offensive clinic and judicial environment to exist;

    **L.**     an injunctive relief to Defendants to make Plaintiff whole by providing for

    **M.**     dismissing the cases filed against Plaintiff;

    **N.**     an award of compensatory damages, including wages, and/or other benefits of employment, as well as damages for mental anguish, pain and suffering, humiliation, embarrassment, degradation, loss of reputation and other non-pecuniary losses, in an amount to be determined, for the Plaintiff, against the Defendants jointly and severally;

    **O.**     an award of punitive damages against the Defendants in an amount to be determined by the court.

P.     determined, jointly and severally, on the grounds that the Defendants' conduct complained of herein was done knowingly, willfully and in bad faith, was done with malice or with reckless indifference, in violation of Plaintiff's right to be free from discrimination based on his religion, national origin, disability and age, and such conduct interfered with Plaintiff's Constitutional Rights and created an intimidating, hostile and offensive standards;

Q.     to grant the Plaintiff his costs, disbursements and attorney fees in bringing this action as provided for by 42 U.S.C. and by all other applicable statutes and provisions;

R.     for such further relief as the Court deems proper and just.

Dated: April 23, 2024.

Respectfully submitted,

Alper Kolcu
225 N 66th St,
Milwaukee, WI, 53213
(312) 404-2424
alkolcu.legal@gmail.com

60

## CERTIFICATE OF COMPLIANCE

I, Plaintiff, Alper Kolcu, certify that the size and style of type used in this document is Times New Roman 14-point Font (caption) and Century Schoolbook 12-point Font (contents); thus, complying with the font requirements of this Court.

## CERTIFICATE OF SERVICE

I, Plaintiff, Alper Kolcu, proceeding as a *pro se*, do hereby certify that on April 23, 2024, I caused this First Amended Complaint to be filed using the clerk of court office, via U.S. mail.

I further certify that the defendants in this action, via their counsel, Karen Tidwall., are supplied with these documents via *U.S. Mail.*

Dated: April 23, 2024.

Alper Kolcu
225 N 66th St,
Milwaukee, WI, 53213
Alkolcu.legal@gmail.com
(312) 404-2424

61

Alper Kolcu
225 N 66th St,
Melwaukee, WI, 53213
(2:22-CV-1552-L.A.)



U.S. District Court
E.D. of WI., Room 362
(2:22-CV-1552-L.A.)

517 E. Wisconsin Ave,
Rm 362,
Melwaukee, WI, 53202